**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| INGEVITY CORP. and<br>INGEVITY SOUTH CAROLINA, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MAHLE FILTER SYSTEMS NORTH<br>AMERICA, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)   No. 18 C 6158<br>)<br>)   Judge Sara L. Ellis<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

On September 7, 2018, Plaintiffs Ingevity Corp. and Ingevity South Carolina, LLC

(collectively, "Ingevity")[1] filed this action against Defendant MAHLE Filter Systems North

America, Inc. ("MAHLE"), asserting that MAHLE infringed Patent No. RE38,844 (the "'844

Patent") through the sale of certain fuel vapor canisters. Shortly after filing this case, on

November 8, 2018, Ingevity filed a complaint with the U.S. International Trade Commission

("ITC"), similarly asserting that MAHLE infringed the '844 Patent. On December 17, 2018,

MAHLE moved to stay this case pursuant to 28 U.S.C. § 1659 until the conclusion of the ITC

proceeding, which this Court granted. Docs. 24, 26. On January 28, 2020, an ITC

Administrative Law Judge ("ALJ") concluded that although MAHLE infringed the '844 Patent,

it had not violated Section 337 of the Tariff Act of 1930 because the patent was invalid based on

a prior invention by Delphi Technologies, Inc. ("Delphi"). Doc. 66-1 at 136–154. On April 7,

2020, the ITC affirmed the ALJ's decision but did not review the issue of prior invention. Doc.

66-7 at 2–3. The U.S. Court of Appeals for the Federal Circuit affirmed the ITC's decision. *See*

---

[1] For simplicity, the Court refers to Ingevity's predecessor companies, Westvaco and MeadWestvaco, as
Ingevity.

*Ingevity Corp. v. Int'l Trade Comm'n*, No. 2020-1800, 2021 WL 3440786, at \*4 (Fed. Cir. July 21, 2021).

Following the Federal Circuit's ruling, the parties attempted to resolve this matter. After unsuccessful settlement discussions, Ingevity moved to voluntarily dismiss this case with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) with each party bearing their own fees and costs. MAHLE agreed that the case should be dismissed with prejudice but argued that the dismissal renders MAHLE the prevailing party and that it should be allowed to seek its attorneys' fees under 35 U.S.C. § 285 because this is an "exceptional" case. The Court agreed that MAHLE is the prevailing party, *see* Doc. 61 (citing *Mother and Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003)), and, although skeptical that this case was exceptional, afforded MAHLE the opportunity to seek attorneys' fees. MAHLE now seeks $4,984,866 in attorneys' fees. In considering the totality of the circumstances, the Court finds that MAHLE has not carried its burden to show that this case was exceptional and denies MAHLE's motion for an exceptional case finding and an award of attorneys' fees pursuant to 35 U.S.C. § 285 [64].

## BACKGROUND

The '844 Patent covers "a method for reducing emissions [called "bleed emissions"] resulting from gasoline evaporation from automobile fuel systems," and "describes a method for controlling bleed emissions that uses two adsorbents." *Ingevity*, 2021 WL 3440786, at \*1–2. The method described in the '844 Patent has two steps: (1) "the first adsorbent step involves contacting the fuel vapor 'with an initial adsorbent volume having incremental adsorbent capacity . . . of greater than 35 g n-butane/L,'" and (2) "the second adsorbent step is contacting the fuel vapor with 'at least one subsequent adsorbent volume having an incremental adsorption capacity [("IAC")] of less than 35 g n-butane/L.'" *Id.* at \*5 (citing '844 Patent at col. 10, ll. 37–

2

44). In the ITC proceeding, the parties did not dispute that the Delphi prior invention met the first adsorbent step. On appeal, "Ingevity's principal contention" was "that the ALJ erred in determining that the Delphi Inventors appreciated that the Delphi Prior Invention performed the second adsorbent step." *Id.* at *3, 5.

With respect to that second step, the parties agree that in October 1999, Ingevity met with Delphi "to discuss using carbon honeycombs in series with a conventional carbon adsorbent volume to reduce fuel vapor canister bleed emissions." Doc. 65 at 7; Doc. 77 at 13. Following that meeting, Ingevity sent two sets of carbon honeycomb samples to Delphi. Doc. 65 at 7. A letter accompanying the first set of honeycombs explained that Ingevity was shipping "two developmental honeycomb samples for [Delphi's] work on reducing canister bleed emissions," and listed among the "basic properties that [Ingevity] had measured for the two honeycomb samples" a butane working capacity ("BWC") of 3.7 g/dL. *Ingevity*, 2021 WL 3440786, at *5. A letter accompanying the second set of honeycombs, labeled Sample Number 445-S-99, explained that they "were made with the same carbon, formation and cell density as the previous" honeycombs. *Id.* In connection with a deposition, Delphi produced the physical canister of the prior invention, which contained a tag indicating that the honeycombs inside were Sample Number 445-S-99. *Id.* In reviewing this evidence, the ALJ found, and the Federal Circuit affirmed, that the Delphi prior invention contained a honeycomb with a BWC of 3.7 g/dL, which correlates to the "IAC of below 35g/L required in the second adsorbent step" of the '844 Patent. *Id.* Thus, the Federal Circuit affirmed the ALJ's finding that MAHLE proved by clear and convincing evidence that the Delphi inventors appreciated that their invention performed the second adsorbent step described in the '844 Patent. *Id.*

3

## ANALYSIS

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Courts consider, "among other factors, 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case)[,] and the need in particular circumstances to advance considerations of compensation and deterrence," as well as whether "the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1387 (Fed. Cir. 2017) (alteration in original) (quoting *Octane*, 572 U.S. at 554 n.6, 556). "The party seeking fees must prove that the case is exceptional by a preponderance of the evidence, and the district court makes the exceptional-case determination on a case-by-case basis considering the totality of the circumstances." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 15 F.4th 1378, 1382 (Fed. Cir. 2021) (citing *Octane*, 572 U.S. at 557–58); *see also Highmark Inc. v. Allcare Health Mgmt. Sys.*, 572 U.S. 559, 563 (2014) ("[T]he determination whether a case is 'exceptional' under § 285 is a matter of discretion."). Even where a court finds a case exceptional, the court has discretion whether to award attorneys' fees. *Rehco LLC v. Spin Master Ltd.*, No. 13-cv-2245, 2020 WL 7025091, at *12 (N.D. Ill. Nov. 30, 2020) (citing *Modine Mfg. Co. v. Allen Grp., Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990)).

MAHLE argues that this case is exceptional because Ingevity knew, or should have known, prior to filing this lawsuit, that the '844 Patent was invalid based on Delphi's prior

invention. MAHLE also argues that Ingevity took "objectively unreasonable positions before the ITC and the Federal Circuit." Doc. 65 at 1. Ingevity responds that MAHLE cannot rely on Ingevity's conduct before the ITC to justify an exceptional case finding in this case, and that even if the Court reaches the ITC proceeding, MAHLE's claims fail because: (1) Ingevity prevailed on some issues before the ITC; (2) Ingevity, not Delphi, invented the subject matter of the '844 Patent; (3) no court has found that Ingevity acted in bad faith in procuring the '844 Patent; and (4) the cases cited by MAHLE do not support an exceptional case finding. MAHLE replies that Ingevity's "arguments are largely collateral to the fundamental issues," which it argues are Ingevity's alleged knowledge of the prior invention and its use of IAC and BWC to differentiate the '844 Patent from the prior invention. Doc. 79 at 9. The Court agrees that the main issue in determining exceptionality in this case is whether before filing this case, Ingevity knew, or should have known, that its patent was invalid because of the prior invention.

Courts have found cases exceptional where a patentee brings an infringement action but knew, or should have known, that their patent was invalid before filing the lawsuit. *See, e.g.*, *IA Labs CA, LLC v. Nintendo Co.*, No. 10-cv-833, 2012 WL 1565296, at *2–3 (D. Md. Apr. 30, 2012) (finding case exceptional where patentee knew of the invalidating activities prior to bringing infringement suit and should have known of the patent's invalidity); *see also Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1274 (Fed. Cir. 2004) ("[T]he pertinent inquiry is whether Spectrum knew or should have known that it could not successfully assert the '647 patent against Tech but pursued its infringement claim anyway.").

MAHLE argues that Ingevity's interactions with Delphi, including the October 1999 meeting and providing honeycombs to Delphi following that meeting, show that Ingevity knew of the prior invention and "stole Delphi's invention." Doc. 65 at 16. Ingevity does not dispute

that it knew of its interactions with Delphi when it filed this lawsuit but because Ingevity believed that it, and not Delphi, invented the subject matter of the '844 Patent, Ingevity did not believe these interactions invalidated the '844 Patent. This is consistent with Ingevity's position before the ITC, where it argued that Delphi got the idea for the prior invention from Ingevity during the October 1999 meeting. Doc. 73-1 at 40. The ALJ noted that this argument would require Ingevity to show that it conceived of the invention prior to the October 1999 meeting, but that Ingevity could not make such a showing because it had conceded that it did not conceive of the invention until August 2001. *Id.*

Ingevity argues that it identified August 2001 as the date of invention based on when it discovered the IAC property because at that time its position was that understanding IAC was necessary to appreciate the invention. *See* Doc. 77 at 7. The ALJ acknowledged that "it is possible" given his "determination that recognition of IACs of the adsorbents is not necessary to appreciate when the invention had been accomplished, that 'conception' by Ingevity occurred prior to August 2001." Doc. 73-1 at 40. But, Ingevity had not put forth enough evidence at that point to show it appreciated the invention prior to the October 1999 meeting. *Id.* Ingevity argues that if this case proceeded, it would have put forth additional evidence, including more evidence surrounding the October 1999 meeting, showing that Ingevity was the first inventor. MAHLE argues that the ALJ's finding that Ingevity had not put forth enough evidence to show it appreciated the invention prior to the October 1999 meeting, shows that "Ingevity's provision of the honeycomb adsorbents to Delphi was found not to evidence prior invention." Doc. 79 at 10. MAHLE further argues that "Ingevity maintaining here that it was the first inventor on this basis ignores the ALJ's express finding on the issue." *Id.* But MAHLE overstates the ALJ's conclusion. As the ALJ recognized, Ingevity had no reason to put forth this evidence because it

was under the impression that its conception date was tied to its understanding of the IAC property. On this basis, MAHLE has not shown that this case "stands out from others" so as to be exceptional. *See Octane*, 572 U.S. at 554.

MAHLE further argues that this case is exceptional because Ingevity advanced an unreasonable legal position when it argued that the Delphi inventors had to appreciate the IAC of their invention for it to invalidate the '844 Patent. To establish that a prior invention was reduced to practice, a party must show that the prior inventor appreciated that "the invention would work for its intended purpose." *Ingevity*, 2021 WL 3440786, at *4. In other words, the prior inventor "must form in their mind[] a definite and permanent idea of the complete and operative invention." *Id.* As the ALJ found, and the Federal Circuit affirmed, an IAC of 35 g/L (the '844 Patent requirement) and a BWC of 8 g/dL (the prior invention requirement) are essentially interchangeable as they relate to the '844 Patent. Doc. 73-1 at 43 (MAHLE's "use of a *rough* correlation between a BWC of 8 g/dL and IAC of 35 g/L is thoroughly supported by the record"); *Ingevity*, 2021 WL 3440786, at *5 (finding that "substantial evidence supports the finding that" MAHLE proved "by clear and convincing evidence that the Delphi Inventors appreciated" the IAC property).

MAHLE asserts that Ingevity's legal arguments were unreasonable because Federal Circuit law provides that "[t]he invention is not the language of the [claims] but the subject matter thereby defined," *Ingevity*, 2021 WL 3440786, at *4 (citation omitted) (alteration in original), and that Ingevity knew that the IAC and BWC values referred to the same subject matter for purposes of the '844 Patent. In response, Ingevity simply states, without support or citation, that "the Federal Circuit narrowly affirmed based on the ITC's fact findings and a brand new interpretation of what it means to 'appreciate' an invention." Doc. 77 at 14. The ALJ found

that the "strongest evidence supporting a rough correlation between 8 g/dL BWC and 35 g/L IAC" was the "correlation table created by" Ingevity, which shows that "with the exception of one outlier, nearly every carbon tested fell along a linear fit, with an intersection between ~8 g/dL BWC and 35 g/L IAC." Doc. 73-1 at 45. The Court agrees with the detailed analyses of the ALJ and Federal Circuit finding that the Delphi inventors appreciated the IAC property. *See* Doc. 73-1 at 42–47; *Ingevity*, 2021 WL 3440786, at *5–6. And given Ingevity's knowledge of the correlation between IAC and BWC, the Court agrees that Ingevity took an unreasonable legal position.

But to the extent that MAHLE claims that Ingevity used IAC rather than BWC nefariously, *see, e.g.*, Doc. 65 at 15 ("Ingevity deliberately claimed made-up IAC terminology and hid behind that terminology in its conception arguments before the ITC and Federal Circuit as being necessary to appreciate the invention."), MAHLE has not met its burden. MAHLE points only to the fact that IAC was a non-standard measurement, used exclusively by Ingevity and that it is nearly identical to BWC. Because MAHLE provides nothing more than speculation that Ingevity "deliberately" obfuscated the '844 Patent's relation to the prior invention by using IAC instead of BWC, the Court finds that MAHLE has not shown bad faith.

Moreover, even if MAHLE could prove that Ingevity knew, or should have known, that the '844 Patent was invalid in light of the prior invention, or that Ingevity acted in bad faith in relying on IAC, in determining exceptionality the Court considers the totality of the circumstances, including the parties' litigation conduct. *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1181 (Fed. Cir. 2018) (finding litigation conduct relevant to the totality of the circumstances analysis). Here, in light of the ITC proceeding, MAHLE moved to stay this case only three months after it was filed, to which Ingevity did not object; it remained

stayed for nearly four years; it did not involve discovery or any substantial motion practice; and Ingevity moved to voluntarily dismiss it following the Federal Circuit's ruling. *See Pathway Innovations & Techs., Inc. v. IPEVO Inc.*, No. 17-CV-312-CAB-BLM, 2020 WL 1983485, at *2 (S.D. Cal. Apr. 24, 2020) (declining to award fees where "case was not actually litigated in this forum" because plaintiff "merely filed a complaint, sought a stay, and then sought dismissal based on the outcome of the proceedings before the ITC and PTAB, which were the forums where the case was truly litigated."). Ingevity's decision to voluntarily dismiss this case following the Federal Circuit's ruling demonstrates its continued assessment of the strength of its case. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) ("[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim construction."); *cf. Upaid Sys., Ltd. v. Card Concepts, Inc.*, No. 17 C 8150, 2022 WL 4482762, at *2 (N.D. Ill. Sept. 27, 2022) (finding case exceptional where plaintiff proceeded with claims despite *Markman* order that "left its infringement claims dead in the water"). The Court finds that the totality of the circumstances do not support a finding of exceptionality in this case.

Even if the Court found this case exceptional, it would not find it appropriate to award MAHLE its requested attorneys' fees.[2] *See Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001) (noting that "the amount of attorney fees awarded may be zero, even though the case is exceptional"); *see also Rehco*, 2020 WL 7025091, at *12 ("The decision whether to award fees is committed to the discretion of the trial judge, and even 'an exceptional case does not require in all circumstances the award of attorney fees.'" (citing *Modine*, 917 F.2d

---

[2] MAHLE asks the Court to award its fees from the ITC proceeding. Ingevity argues that there is no legal basis for awarding fees from the ITC proceeding and that "no district court has ever awarded attorneys' fees under similar circumstances." Doc. 77 at 8. But because the Court finds that this case is not exceptional and an award of attorneys' fees generally would not be appropriate, it need not reach the question of whether a party can recover fees from another proceeding under § 285.

at 543)); *Modine*, 917 F.2d at 543 (noting that district court has discretion to deny attorneys' fees even where a jury found willful infringement). "[I]t is clear that the aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur. The aim is not to punish a plaintiff for bringing those claims—an inquiry that legitimately would involve inquiry into the plaintiff's state of mind." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013). Whether this case proceeded in the ITC or this Court, MAHLE would have incurred attorneys' fees. Because the ITC's findings are not binding on this Court, *see INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1370 (Fed. Cir. 2022), even after the Federal Circuit's ruling, Ingevity could have proceeded on its claims in this case, leading to additional expenses for both parties. Rather Ingevity moved to voluntarily dismiss this case, saving the parties from incurring additional costs. *See Pathway*, 2020 WL 1983485, at *2 (finding the "aim of section 285 has been served" where defendant "did not incur significant attorneys' fees *as a result of this federal lawsuit* that it would not otherwise have incurred in light of the ITC proceeding" (emphasis in original)). Further, under 35 U.S.C. § 282, U.S. patents "are accompanied by a presumption of validity." *Nature Simulation Sys. Inc. v. Autodesk, Inc.*, 50 F.4th 1358, 1361 (Fed. Cir. 2022). An award of attorneys' fees in this case would undermine U.S. patent holders' ability to enforce patents that they believe to be valid. Thus, even if the Court found this case exceptional, it would exercise its discretion and decline to award any attorneys' fees.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for an exceptional case finding and an award of attorneys' fees pursuant to 35 U.S.C. § 285 [64].

Dated: March 7, 2023

_____

SARA L. ELLIS
United States District Judge